

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HECTOR MONTANO, | Case No. CV 12-3462 FMO (AGRx) |
| Plaintiff, | |
| v. | **FINDINGS OF FACT and CONCLUSIONS OF LAW** |
| BONNIE BRAE CONVALESCENT HOSPITAL, INC., et al., | |
| Defendants. | |

**INTRODUCTION**

On May 29, 2012, Hector Montano ("plaintiff") filed the operative First Amended Complaint ("FAC") against Bonnie Brae Convalescent Hospital, Inc. ("defendant" or "Bonnie Brae"), and Does 1-10, inclusive. Plaintiff alleges violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, et seq.; the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900, et seq.; the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, et seq.; the California Disabled Persons Act ("CDPA"), Cal. Civ. Code §§ 54, et seq.; the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701, et seq.; and California Unfair Business Practices Act ("Section 17200"), Cal. Bus. & Prof. Code §§ 17200, et seq. (See FAC at ¶¶ 17-54). Plaintiff also asserts claims of intentional infliction of emotional distress, reckless neglect, tort per se, and negligence. (See id. at ¶¶ 55-75). Plaintiff, who has quadriplegia and relies on a wheelchair for mobility, alleges that defendant, the operator of a skilled nursing home facility, discriminated against him because of

his disability by, among other things,  failing to accommodate his disability in various ways and provide him with accessible facilities.  (See id. at ¶¶ 1-2, 7-16 & 19-21).

A bench trial was held and the court, having heard live testimony and duly considered the evidence, the credibility of the witnesses, the entire file and the contentions and arguments of counsel,[1] hereby makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## **FINDINGS OF FACT**

1.  Plaintiff Hector Montano ("plaintiff") is an individual with a mobility disability as defined in applicable federal and state disability laws, including the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., the FHA, the FEHA, the Unruh Civil Rights Act, and the Disabled Persons Act.  (See Pretrial Conference Order ("PTO") at 2, ¶ 1; Testimony of [Plaintiff] Hector Montano ("Montano Decl."), Dkt. No. 49, at ¶ 3).

2.  Plaintiff is paralyzed from the chest down and uses a motorized wheelchair for mobility. (See PTO at 3, ¶ 2).  Plaintiff cannot transfer to and from his wheelchair independently.  (See id. at ¶ 8).

3. He has limited use of his hands and cannot grasp objects.  (See PTO at 3, ¶ 6).

4.  Due to plaintiff's disability, he cannot regulate his body temperature and is therefore endangered if he is exposed to temperature extremes.  (See PTO at 3, ¶ 10).

5.  Plaintiff is diabetic.  (See PTO at 3, ¶ 7).

---

[1]   In addition to requiring the parties to submit proposed findings of fact and conclusions off law, the court requested the parties to address the following in their post-trial briefs: (1) whether defendant is a covered entity within the meaning of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act; (2) what defendant's duty is to provide reasonable accommodations under the FHA, the ADA, and Section 504 of the Rehabilitation Act, given that the nursing home facility in question was constructed in 1960; (3) a listing and description of the specific instances that constitute violations of the FHA, FEHA, Unruh Civil Rights Act, Section 504 of the Rehabilitation Act, and Disabled Person's Act; (4) the amount of damages and the type of injunctive relief the court should grant in the event the court finds in favor of plaintiff; (5) whether the court needs to make any findings with respect to plaintiff's tort claims if the court finds a violation under any of the civil rights statutes; (6) whether the accommodations requested by plaintiff qualify as "rules, policies, or services" under 42 U.S.C. § 3604(f)(3)(B); and (7) whether defendant seeks to raise the affirmative defense of undue hardship, and if so, whether defendant has waived the defense.  (See Court's Order of October 29, 2013, at 1-2).

6.  Plaintiff requires extensive assistance with his activities of daily living.  (See PTO at 3, ¶ 9).

7.  Defendant is a California corporation that owns and operates a 60-bed skilled nursing home facility, located at 420 South Bonnie Brae Street in Los Angeles.  (See PTO at 3, ¶ 3).

8.  Defendant receives both Medicare and Medi-Cal funds.  (See Reporter's Transcript ("RT") at 66).

9.  More than half of defendant's residents use wheelchairs.  (See RT at 79-80, 88).

10.  Plaintiff has been an adult resident of Bonnie Brae since 2009.  (See PTO at 3, ¶ 5).

11.  From April 2009 to January 11, 2012, plaintiff lived in Room 20, a two-person room.  (See PTO at 3, ¶ 11; RT at 15-16).

12.  Plaintiff could not use the bathroom in Room 20 without assistance.  (See RT at 52).  For example, the door to the bathroom in Room 20 was equipped with a knob handle, which required more than 10 pounds of force to open.  (See PTO at 3, ¶ 12).  The doorway was barely wide enough for his wheelchair to fit through and the sink was too low for plaintiff to fit his knees underneath it.  (See Montano Decl. at ¶ 24(b)).  Plaintiff could not use the faucets on the sink and the towel dispenser was too high.  (See id.).  Due to the difficulty plaintiff had with the bathroom in Room 20, he used the sink in the hallway.  (See RT at 10).

13.  While living in Room 20, plaintiff repeatedly asked defendant's employees to modify the bathroom door and sink to allow him access.  (See PTO at 3, ¶ 13).

14.  In or about May 2011, defendant's employees informed plaintiff that he was going to be moved to a room with less space for his wheelchair because defendant wanted to use Room 20 to house female residents.  (PTO at 3, ¶ 14).  Plaintiff informed defendant's employees that he did not want to be moved to the new room because it did not provide enough space for him to move around in his wheelchair and he could not enter the bathroom.  (Id. at ¶ 15).

15.  On June 2, 2011, plaintiff delivered a letter to defendant requesting that he not be moved from Room 20.  (PTO at 4, ¶ 16).  Defendant responded to plaintiff's letter of June 2, 2011, stating, in part, that plaintiff "will be allowed to stay in his current room.  Even if he is moved to a

different room within this facility, any of the rooms he has been given a choice to select, will accommodate his wheelchair." (Id. at 4, ¶ 17).

16. From January 11, 2012, to January 23, 2012, plaintiff was hospitalized at California Hospital due to stomach and kidney problems. (See RT at 9; PTO at 4, ¶ 18). When plaintiff returned to Bonnie Brae, he was moved to Room 2. (See PTO at 4, ¶ 18).

17. Defendant does not need plaintiff's permission to move plaintiff from one room to another. (See RT at 7-8). Defendant has a policy whereby patients lose their bed if they are gone for more than seven days. (See id. at 82-83).

18. In Room 2, plaintiff had less room to move around because he had to share the room with three other people. (See RT at 23). Plaintiff also could not access the bathroom in Room 2 because his wheelchair would not fit through the doorway. (See id.; Montano Decl. at ¶¶ 10 & 24(k)).

19. Plaintiff also complained of Room 2 being too hot, and several times had difficulty breathing due to the heat. (See RT at 26).

20. Although Michelle Cayton, an employee of Bonnie Brae, testified that Bonnie Brae keeps the room temperature at 74 degrees, (see RT at 73-74), the court did not find the witness credible on this point, i.e., whether the temperature in plaintiff's room was too hot.

21. On February 10, 2012, shortly after returning from the hospital, plaintiff delivered a letter to defendant explaining the issues he was having with Room 2 and requested that he be assigned back to Room 20 or another two-person room of the same size or larger, with a bathroom and sink he could use. (See PTO at 4, ¶ 22; RT at 15-16).

22. Plaintiff asked that the bathroom doors be widened to allow him access with his wheelchair, and for defendant to change the door knobs to levers. (See PTO at 4, ¶ 23; RT at 16).

23. Plaintiff also requested that defendant fix the door to the bathroom in Room 20 so it did not jam and require great force to open, and change the sink's fixtures from knobs to handles so plaintiff could open and close the faucet independently. (See PTO at 4, ¶ 24; RT at 16).

24. Defendant informed plaintiff in March 2012 that he could no longer use the hallway sink outside Room 20 to wash his face and brush his teeth. (See PTO at 4, ¶ 19). Defendant said if

plaintiff continued to use the sink, a formal complaint would be issued against him.  (See id. at ¶ 20).

25.  Plaintiff was never returned to Room 20.  (See PTO at 5, ¶ 25).

26.  In May 2012, plaintiff was moved from Room 2 to Room 7, a two-person room with a bathroom shared with an adjacent room.  (See Montano Decl. at ¶ 21).  While plaintiff could open the main door and the bathroom door in Room 7, plaintiff could not enter the bathroom because the toilet blocked his wheelchair.  (See id. at ¶ 24(l)).

27.  In December 2012, plaintiff was moved to Room 8, another two-person room, and remains in that room.  (See PTO at 5, ¶ 1; RT at 16).  Room 8's bathroom door knob was changed to levers and the bathroom doorway was widened.[2]  (See PTO at 5, ¶ 1).  There were no changes made to the sink area.  (See id.).

28.  Plaintiff has difficulty using bathroom sinks at Bonnie Brae not only because of the fixtures but also because his legs do not fit underneath the sink area without touching the piping, which is exposed and uninsulated.  (See RT at 21, 35).

29.  Since plaintiff has difficulty accessing the sinks in Bonnie Brae's private bathrooms, plaintiff uses a sink in the hallway.  (See RT at 21).  To use the hallway sink, plaintiff leans over sideways, preventing him from properly washing his face.  (See id. at 21).  Defendant reminded plaintiff on several occasions not to use the hallway sink.  (Id. at 27-28).

30.  The hallway sink fixtures were changed to levers at some point after plaintiff was moved out of Room 20, his original room.  (See RT at 22).  At least one other sink received the same modification during this time.  (See id. at 101-02).

31.  Throughout his stay at Bonnie Brae, plaintiff only used the shower in the hallway due to access issues.  (See RT at 30-31).  Plaintiff could not manipulate the water in this shower due to the fixture design.  (See id. at 28).  Plaintiff had to wait for assistance to turn the water on and off.  (See id. at 30).

---

[2]  Plaintiff filed the instant action on April 20, 2012.  (See Request to Proceed in forma pauperis Complaint).  Thus, defendant made the modifications referenced in this paragraph after the lawsuit was initiated.

32.   Defendant never had a conversation with plaintiff about his accommodation needs. (See RT at 34).   Defendant never took measurements of plaintiff's wheelchair.   (See id.). Defendant also never discussed with plaintiff the problems plaintiff was having with the sinks. (See id.).

33.   Defendant never told plaintiff that making any of the changes plaintiff requested would cost money.   (See RT at 39).

34.   Any finding of fact that more correctly constitutes a conclusion of law should be treated as such.

## CONCLUSIONS OF LAW

I.      THE FHA AND FEHA.

35.   Defendant is a covered entity within the meaning of the FHA and the FEHA.   See 42 U.S.C. § 3602(b); Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1102 (3d Cir. 1996) ("To the handicapped elderly persons who would reside there, [the nursing home] would be their home, very often for the rest of their lives.   We therefore hold that the proposed nursing home is a 'dwelling' within the meaning of § 3602(b).").

36.   The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privilege of sale or rental of dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of [that person]." 42 U.S.C. § 3604(f)(2)(A). The FHA's definition of prohibited discrimination encompasses "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."   Id. at § 3604(f)(3)(B).

37.   The FHA "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons."   United States v. California Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1416 (9th Cir. 1994).

38.   To make a claim of discrimination based on a failure to reasonably accommodate, a plaintiff must show that: (1) he suffers from a handicap as defined by the FHA; (2) defendant knew or reasonably should have known of plaintiff's handicap; (3) the accommodation plaintiff requested

"may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendant refused to make such accommodation.  See Giebeler v. M&B Assoc., 343 F.3d 1143, 1147 (9th Cir. 2003); 42 U.S.C. § 3604(f)(3)(B).

39.  As noted above, plaintiff is an individual with a disability within the meaning of the FHA and the FEHA.  See supra at ¶ 1.

40.  The evidence is undisputed that defendant knew of plaintiff's disability, as plaintiff has been living at Bonnie Brae since at least 2009.  (See PTO at 3, ¶ 5).

41.  An accommodation is necessary if there is evidence "showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability."  Dadian v. Vill. of Wilmette, 269 F.3d 831, 838 (7th Cir. 2011); see Giebeler, 343 F.3d at 1155 ("To prove that an accommodation is necessary, plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice.") (internal quotation marks and brackets omitted).

42.  Plaintiff requested that defendant:  (1) provide him with a room with sufficient space to accommodate his wheelchair; (2) widen the doorway so he could access his bathroom; (3) install accessible door handles; (4) provide accessible bathroom fixtures; (5) lighten heavy doors; (6) maintain a moderate temperature in his room; and (7) allow him to use the hallway sink in the interim.  (See Montano Decl. at ¶¶ 5, 8, 11, 13 & 18-19).

43.  The evidence demonstrates that the requested accommodations may be necessary to afford plaintiff an equal opportunity to fully use and enjoy the housing of his choice.  (See, e.g., Montano Decl. at ¶¶ 5, 7 & 10-12; RT at 26, 28 & 36-37); see Giebeler, 343 F.3d at 1155 (finding that a plaintiff is entitled to receive accommodations under the FHA if the adjustment is both reasonable and "necessary to afford [him] equal opportunity to use and enjoy a dwelling") (alteration in original).  The causal link between defendant's failure to accommodate and plaintiff's disability is obvious.  For example, while plaintiff was in Room 20 – where he lived for more than two years – he could not open the door to the bathroom because it was equipped with a knob handle and could not fit his wheelchair through the doorframe.  (See Montano Decl. at ¶ 5). Various sinks either do not accommodate plaintiff's wheelchair or have exposed, uninsulated

pipes.  (See id. at ¶¶ 22(e)-(f), 24(b) & 24(m); RT at 36).  In short, the court concludes that defendant's failure to provide the requested accommodations denied plaintiff the equal opportunity to use and enjoy a dwelling.

44.  Many, if not all, of plaintiff's requested accommodations are "reasonable" within the meaning of the applicable statutes – the FHA, ADA, Rehabilitation Act, FEHA, and CDPA – as many of the requested accommodations are set forth in the regulations.[3]  See 28 C.F.R. § 36.304(b) (citing as examples of steps to remove barriers: widening doors, installing accessible door hardware, insulating lavatory pipes under sinks to prevent burns, installing full-length bathroom mirrors, and repositioning paper towel dispenser in a bathroom); Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35,544-01, 35,567 (July 26, 1991) (providing that while ready achievability is "to be determined on a case-by-case basis," 28 C.F.R. § 36.304(b) "provides a wide-ranging list of the types of modest measures that may be taken to remove barriers and that are likely to be readily achievable").  In addition, defendant has already made some of the requested accommodations, (see PTO at 5, ¶ 1; RT at 14-16), albeit after the lawsuit was filed.  In short, given the facts and evidence presented, the court finds that plaintiff made a sufficient showing that the requested accommodations are reasonable and possible.

45.  Defendant did not, during various stretches of plaintiff's time at Bonnie Brae, provide him with any of the requested accommodations.  (See Montano Decl. at ¶¶ 5, 11 & 18).

46.  Defendant did not put forth sufficient or credible evidence to rebut plaintiff's showing that the requested accommodations were, in fact, reasonable.  (See, generally, Declaration of

---

[3]  "The concept that policies and practices must be modified in some instances to accommodate the needs of the disabled is common to" the FHA, ADA and Rehabilitation Act.  Giebeler, 343 F.3d at 1149.  Therefore, courts often rely on and apply the case law and regulations interpreting the ADA and the Rehabilitation Act in interpreting the "accommodation" of disabled individuals under the FHA.  See id. ("We therefore look to both [the Rehabilitation Act] and ADA interpretations of 'accommodation' of disabled individuals as indicative of the scope of 'accommodation' under the [FHA].").  In so doing, the court "interpret[s] the [FHA]'s accommodation provisions with the specific goals of the [FHA] in mind: to protect the right of handicapped persons to live in the residence of their choice in the community, and to end the unnecessary exclusion of persons with handicaps from the American mainstream."  Id. (internal quotation marks omitted).

[Defendant's Expert] Mark Anderson, Dkt. No. 50; Defendant's Proposed Findings of Fact and Conclusions of Law, Dkt. No. 60; Defendant Bonnie Brae Convalescent Hospital's Post Trial Brief ("Defendant's Post-Trial Brief"), Dkt. No. 69).

47.  "[T]he history of the FHAA[4] clearly establishes that Congress anticipated that landlords would have to shoulder certain costs involved, so long as they are not unduly burdensome." California Mobile Home Park Mgmt. Co., 29 F.3d at 1416; see Giebeler, 343 F.3d at 1152 ("Accommodations need not be free of all possible cost to the landlord[.]").

48.  Defendant did not meet its burden of demonstrating, under the circumstances of this case, that plaintiff's requested accommodations would cause it to suffer undue hardship.  In fact, defendant has already made some of the modifications to its facility.  (See PTO at 5, ¶ 1; RT at 14-16).

49.  As part of the reasonable accommodation process, defendant was required to engage in the "interactive process" with plaintiff to discuss and explore plaintiff's requested accommodations.  See Jankowski Lee & Assoc. v. Cisneros, 91 F.3d 891, 895 (7th Cir. 1996) (as amended Aug. 26, 1996) ("If a landlord is skeptical of a tenant's alleged disability or the landlord's ability to provide an accommodation, it is incumbent upon the landlord to request documentation or open a dialogue."); Book v. Hunter, 2013 WL 1193865, *4 (D. Or. 2013) ("The defendants may have believed that the plaintiff was not truly disabled or that her request for accommodation was unreasonable.  However, under the FHAA they were required to engage in an interactive process to determine whether or not that was the case.").

50.  Plaintiff requested accommodations regarding his room and bathroom for more than two years.  (See Montano Decl. at ¶ 5; FAC at ¶ 9).

51.  Defendant either refused or failed to respond to plaintiff's reasonable accommodation requests and did not discuss alternative options that would have enabled plaintiff to have equal access and enjoyment of his dwelling.  (See Montano Decl. at ¶¶ 5, 11, 18; RT at 27, 34 & 39).

---

4  "Congress extended the FHA's protection to handicapped persons in the Fair Housing Amendments Act of 1988 ('FHAA')."  California Mobile Home Park Mgmt. Co., 29 F.3d at 1416.

52.   Defendant's conduct, by failing to reasonably accommodate plaintiff's disability, constitutes a violation of the FHA.  See 42 U.S.C. § 3604(f)(3)(B); United States v. Pac. Northwest Elec., Inc., 2003 WL 24573548, *14 (D. Idaho 2003) (finding an inaccessible bathroom door to be a violation of the FHA); Parris v. Pappas, 844 F.Supp.2d 271, 277 (D. Conn. 2012) (finding an inability to use sinks to be a violation of the FHA).

53.   Defendant's conduct, by failing to engage in the interactive process relating to the nature and scope of plaintiff's requested accommodations, also constitutes a violation of the FHA. See  Jankowski, 91 F.3d at 895 (holding that building owners and managers were in violation of the FHA where they knew of a tenant's handicap and denied tenant's requests "without asking for more information regarding the extent to which [tenant's handicap] limited his activities"); Book, 2013 WL 1193865 at *3-4 (concluding defendants violated FHA because they failed to engage in an interactive process to determine whether requested accommodation was reasonable); Smith v. Powdrill, 2013 WL 5786586, *7 (C.D. Cal. 2013) (granting plaintiff summary judgment on FHA claim where undisputed facts indicated defendants failed "to engage in an 'interactive process' with Plaintiff to explore alternatives."); Rodriguez v. Morgan, 2012 WL 253867, *9 (C.D. Cal. 2012) (once defendant on notice about plaintiff's disability and need for reasonable accommodation in conditions of lease, "if [he] had any questions regarding the full nature and scope of Plaintiff's disabilities or her position as to whether she would agree to anything less than an immediate termination of her lease, he should have opened a dialogue with her and/or her representative."); see also Auburn Woods I Homeowners Ass'n v. Fair Employment and Housing Commission, 121 Cal.App.4th 1578, 1598 (2004) ("If [defendant landlord] needed additional information about [plaintiffs'] medical condition or their need [for a reasonable accommodation], it was obligated to request it.  It could not simply sit back and deny a request for reasonable accommodation because it did not think sufficient information had been presented or because it did not think [plaintiffs] had spoken the 'magic words' required to claim the protections of FEHA.").

54.  The FEHA makes it unlawful to refuse "to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling."  Cal. Gov't Code § 12927(c)(1);

Rodriguez, 2012 WL 253867 at *3.

55.  The FEHA also makes clear that the definition of disability under the ADA applies if it provides "broader protection or coverage" than the FEHA's own definitions.  Cal. Gov't Code § 12926(n); see also Behavioral Health Servs., Inc. v. City of Gardena, 2003 WL 21750852, *11 (C.D. Cal. 2003).  Therefore, since the "FEHA's protections are by definition at least as great as those under the FHA, failure to accommodate which violates the FHA also violates the FEHA." Behavioral Health Servs., 2003 WL 21750852 at *11.  Accordingly, the court finds that defendant is in violation of the FEHA.

II.    THE UNRUH CIVIL RIGHTS ACT AND THE ADA.[5]

56.  Plaintiff is disabled with the meaning of the ADA and the Unruh Civil Rights Act.  See supra at ¶ 1.

57.  Defendant is a nursing home that is a covered entity under Title III of the ADA and was subject to it at all relevant times, as it is a health care provider and thus a place of public accommodation.  See 42 U.S.C. §§ 12181(7)(F) & (K) (defining certain private entities as places of public accommodation, including a "professional office of a health care provider, hospital, or other service establishment" and a "senior citizen center[] . . . or other social service establishment"); Hubbard v. Twin Oaks Health & Rehab. Ctr., 408 F.Supp.2d 923, 929 (E.D. Cal. 2004) (undisputed that a "skilled nursing facility" was a place of public accommodation under the ADA); Herriot v. Channing House, 2009 WL 225418, *6 (N.D. Cal. 2009) (undisputed that defendant, a continuing care retirement community for people over age 62, was covered entity under ADA); see also Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35,544-01, 35,552 (July 26, 1991) (nursing facility or residential care facility is "a place of public accommodation under the ADA" if "it can appropriately be categorized as a service establishment or as a social service establishment").

58.  Title III of the ADA prohibits discrimination based on disability by places of public

---

[5] While plaintiff does not explicitly allege an ADA cause of action, (see, generally, First Amended Complaint), the court examines it since is the basis for plaintiff's claim under the Unruh Civil Rights Act.  (See PTO at 6-7).

accommodation:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

59.  Discrimination includes "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"  42 U.S.C. § 12182(b)(2)(A)(ii).

60.  Discrimination also includes "a failure to remove architectural barriers[] . . . in existing facilities . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense[,]" taking into account factors such as:

> [¶] (A) the nature and cost of the action needed under this chapter; [¶] (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; [¶] (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and [¶] (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9).  "[W]here an entity can demonstrate that the removal of a barrier . . . is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable"

will also be deemed discriminatory.  42 U.S.C. § 12182(b)(2)(A)(v).

61.  Federal regulations demonstrate that the types of barrier removals that are likely to be readily achievable,[6] include, among other things: widening doors, installing offset hinges to widen doorways, installing accessible door hardware, and insulating lavatory pipes under sinks to prevent burns.  28 C.F.R. § 36.304(b).  The height and accessibility of bathroom fixtures and accessories can also be barriers.  See Molski v. M.J. Cable, Inc., 481 F.3d 724, 731-32 (9th Cir. 2007) (finding "excessive door pressure, stalls that were neither wide enough nor long enough . . . a toilet seat cover dispenser that was too high, a paper towel dispenser that was too high, a height-compliant paper towel dispenser that was blocked by a sink, sinks without levered hardware, [and] no insulation on the pipes" to be barriers that needed to be removed pursuant to the ADA).

62.  Defendant did not plead, as an affirmative defense, that barrier removal would not be readily achievable in either its Answer or the PTO.  (See, generally, Answer to First Amended Complaint at 9-10; PTO at 11).  Although plaintiff argues that defendant waived this affirmative defense, (see Plaintiff's Memorandum of Points and Authorities Re: Bench Trial ("Plaintiff's Post-Trial Brief") at 6-7), and there is authority for that proposition, see, e.g., Wilson v. Haria & Gogri Corp., 479 F.Supp.2d 1127, 1133 n. 7 (E.D. Cal. 2007) ("[D]efendant has failed to plead that barrier removal is not readily achievable in its answer.  Accordingly, the defense is waived.") (citation omitted); Doran v. Del Taco, 2005 WL 3478136, *1 (C.D. Cal. 2005) (granting defendants leave to plead affirmative defense that barrier removal not readily achievable in amended answer); see also Enlow v. Salem-Keizer Yellow Cab Co., 389 F.3d 802, 819 (9th Cir. 2004), cert. denied 544 U.S. 974 (2005), ("Failure to plead an affirmative defense . . . results in a waiver of that defense."), the court declines to decide that issue here.

63.  Even assuming defendant did not waive its affirmative defense, defendant has not

---

[6]  "As the agency directed by Congress to issue implementing regulations, see 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b), the Department[ of Justice]'s views are entitled to deference."  Bragdon v. Abbott, 524 U.S. 624, 646, 118 S.Ct. 2196, 2209 (1998).

provided sufficient or credible evidence that the requested modifications are not readily

achievable.[7]   In fact, defendant has already made some of the requested modifications to other

rooms and/or sinks within its facility during the relevant time period, (see PTO at 5, ¶ 1; RT at 14-

16), thereby demonstrating that the requested modifications were readily achievable.   See, e.g.,

Wilson v. Pier 1 Imports (US), Inc., 439 F.Supp.2d 1054, 1069 (E.D. Cal. 2006) ("Given that the

barrier has already been cured, the court must find that it was readily achievable, and thus that

it violated the ADA and subsequently the Unruh Act."); Nat'l Alliance for Accessability, Inc. v.

McDonald's Corp., 2013 WL 6408650, *9 (M.D. Fla. 2013) ("Because the architectural barriers

identified by Plaintiffs have already been removed to bring the property into compliance, the Court

infers that barriers were present, and their removal was readily achievable.").   For the same

reasons, defendant has not put forth sufficient evidence that the requested modifications would

fundamentally alter the nature of the nursing home.   See 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R.

---

[7]   Defendant argues that it was plaintiff's initial burden to establish that barrier removal is readily achievable, and that plaintiff did not meet his burden.  (See Defendant's Post-Trial Brief at 2-5). "The Ninth Circuit has yet to decide who has the burden of proving that removal of an architectural barrier is readily achievable."  Vogel v. Rite Aid Corp., 2014 WL 211789, *7 (C.D. Cal. 2014).  In Molski v. Foley Estates Vineyard & Winery, LLC, 531 F.3d 1043, 1048 (9th Cir. 2008), the Ninth Circuit "place[d] the burden of production on defendant," with regard to whether barrier removal at historic facilities was readily achievable because defendant has "the best access to information" and "is in a better position to introduce, as part of its affirmative defense, detailed evidence and expert testimony[.]"  Id., 531 F.3d at 1048.  It reasoned, "Congress relies on private actors, i.e., disabled individuals, to enforce the ADA by filing lawsuits.  Thus plaintiffs should not be deterred from filing meritorious claims by an inappropriate allocation of the burden of production."  Id. at 1049.  Some district courts have limited Foley Estates "to the historic building context," Vogel, 2014 WL 211789 at *7 n. 35, and require ADA plaintiffs to bear the initial burden of production that modifications are readily achievable, and then shift the burden of persuasion to disprove ready achievability to defendants.  See, e.g., Vogel, 2014 WL 211789 at *8; McComb v. Vejar, 2014 WL 5494017, *6 & n. 8 (C.D. Cal. 2014); Johnson v. Beahm, 2011 WL 5508893, *3 (E.D. Cal. 2011); Sceper v. Trucks Plus, 2009 WL 3763823, *3 (E.D. Cal. 2009); Hubbard v. Rite Aid Corp., 433 F.Supp.2d at 1150, 1169 (S.D. Cal. 2006); Vesecky v. Garick, Inc., 2008 WL 4446714, *3 (D. Ariz. 2008).  Other courts have extended the reasoning of Foley Estates to impose the burden of production related to the achievability of barrier removal on defendant owner/operators of non-historic facilities.  See, e.g., Rodriguez v. Barrita, Inc., 2012 WL 3538014, *11 (N.D. Cal. 2014); Lemmons v. Ace Hardware Corp., 2014 WL 3107842, *11 (N.D. Cal. 2014).  Even if plaintiff bears the initial burden of production, he has satisfied it here.  (See RT at 14-16) (defendant made many requested modifications after plaintiff brought action).  Defendant, for its part, did not produce sufficient or credible evidence that the requested modifications are not readily achievable and therefore its defense fails.

§ 36.304(b); <u>Hargrave v. Vermont</u>, 340 F.3d 27, 38 (2d Cir. 2003) (upholding district court's injunction where the "defendants fail to identify clearly and consistently the 'program, service, or activity' that they believe would be fundamentally altered").[8]

64.  In light of the foregoing, the court finds that defendant violated the ADA by, among other things: (1) failing to widen the doorways or modify the door handles of plaintiff's bathroom while he stayed in Room 20, Room 7, and Room 2; (2) not adjusting the sink, mirror, or other fixtures in any of plaintiff's bathrooms; and (3) failing to insulate the pipes under the various sinks.

65.  Defendant has also violated the Unruh Civil Rights Act, as "[a] violation of the right of any individual under the [ADA] shall also constitute a violation of this section."  Cal. Civ. Code § 51(f).

III.   THE REHABILITATION ACT.

66.  The Rehabilitation Act provides that no individual with a disability shall "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794(a).

67.  The Ninth Circuit has used virtually the same standard when evaluating claims under the ADA and the Rehabilitation Act.  <u>See</u> <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002), <u>cert.</u> <u>denied</u> 537 U.S. 1104 (2003), ("We examine cases construing claims under the ADA, as well as section 504 of the Rehabilitation Act, because there is no significant difference in the analysis of rights and obligations created by the two Acts.").

68.  Defendant receives federal financial assistance through Medicare and Medi-Cal funds. (<u>See</u> RT at 66, 74-75 & 103).  Since plaintiff was subjected to disability discrimination under the ADA, the court finds he was also subjected to discrimination under the Rehabilitation Act.

IV.   THE CDPA.

69.  The CDPA provides that "[a]ny person renting, leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodation in rules, policies,

---

[8]  While one of defendant's employees testified that replacing a sink could cost over $10,000, (<u>see</u> RT at 74-78), the court did not find the evidence or the witness credible on this point.

practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises."  Cal. Civ. Code § 54.1(b)(3)(A). "This language closely parallels the language defining a 'reasonable accommodation' claim under the FEHA."  Smith, 2013 WL 5786586 at *10.  In light of these similarities, the court finds that defendant violated the CDPA with respect to plaintiff's reasonable accommodation claim.  See id. at *10-11.

70.  The CDPA also states that "[a] violation of the right of an individual under the [ADA] also constitutes a violation of this section[.]"  Cal. Civ. Code § 54.1(d).  Therefore, in violating the ADA, defendant has also violated the CDPA.

71.  Damages are not recoverable under both the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, et seq., and the CDPA, Cal. Civ. Code §§ 54, et seq..  See Cal. Civ. Code § 54.3(c); Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest., 406 F.Supp.2d 1120, 1130 (S.D. Cal. 2005) ("[A] plaintiff may not recover under both the [CDPA] and the Unruh Act"). Plaintiff has chosen to seek damages pursuant to the Unruh Civil Rights Act.  (See Plaintiff's Reply Brief at 12-13).  Therefore, no damages will be awarded for defendant's violation of the CDPA.

V.    CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200.

72.  Section 17200 broadly prohibits any "unlawful, unfair or fraudulent business act or practice[.]"  Cal. Bus. & Prof. Code § 17200.

73.  A claim under Section 17200 "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200."  Farmers Ins. Exchange v. Superior Court, 2 Cal.4th 377, 383 (1992) (internal quotation marks omitted).  Further, the "violations of the [FHA], FEHA and the Unruh Civil Rights Act constitute unlawful competition under section 17200."  Pack v. Fort Washington II, 689 F.Supp.2d 1237, 1249 (E.D. Cal. 2009); Hous. Rights Ctr., Inc. v. Moskowitz, 2004 WL 3738293, *6 (C.D. Cal. 2004) ("Here, plaintiffs sufficiently plead violations of FEHA and Unruh; accordingly, they may state a claim under section 17200 as well.").

74.  As detailed above, defendant violated the FHA and FEHA through its actions and inactions involving, among other things, plaintiff's room, bathroom, and sink access.  Therefore,

defendant is in violation of Section 17200.

VI.    OTHER STATE LAW CLAIMS.

75.    As stated above, plaintiff also brought several common law tort claims against defendant.  (See FAC at ¶¶ 55-75).  Plaintiff concedes that the court need not consider these claims if the court finds violations of the FHA or FEHA.  (See Plaintiff's Post-Trial Brief at 24).  Because the court finds defendant to be in violation of the FHA and FEHA, the court will not examine plaintiff's tort claims.

VII.    REMEDIES.

A.    Damages.

76.    Under the FHA, the court may grant as relief, as the court deems appropriate, actual and punitive damages, as well as "any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)."  42 U.S.C. § 3613(c)(1).  The FEHA also provides for compensatory and punitive damages and injunctive relief.  See Cal. Gov't Code § 12989.2.  In addition, a defendant who violates the Unruh Civil Rights Act is "liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars[.]"  Cal. Civ. Code § 52(a).

77.    From the statutory two year limitations period for damages claims, commencing on April 20, 2010, to the present, defendant has continuously violated plaintiff's rights under the FHA, the FEHA and the Unruh Civil Rights Act by, among other things: (1) denying plaintiff his requested reasonable accommodations; (2) failing to engage plaintiff in the interactive process with respect to his requested reasonable accommodations; and (3) otherwise failing to make the requested modifications and to provide plaintiff with accessible facilities.  At a minimum, plaintiff is entitled to actual and compensatory damages for the pain, suffering and anguish he suffered and continues to suffer because of the numerous accessibility issues he has and continues to endure because of defendant's failure to reasonably accommodate his disability.  For example, from at least May 2011 until the date of the bench trial, defendant still had not provided plaintiff

with his requested accommodation of an accessible bathroom adjacent to his room. (See Montano Decl. at ¶¶ 5, 17, 21-22 & 24). Though defendant modified the bathroom door of Room 8, where plaintiff resided as of the date of the trial, defendant still has failed to provide an accessible sink, mirror or paper towel dispenser. (See Montano Decl. at ¶¶ 21-22; RT at 16-17). In addition, plaintiff is entitled to damages for the time period (i.e., from January to May 2012) when he was placed in a room where he was subjected to extreme room heat. (See Montano Decl. at ¶¶ 11-12). In short, plaintiff is entitled to an award of damages for his emotional distress and pain and suffering he endured as a result of defendant's conduct. Based on the court's determination that defendant violated plaintiff's rights under the FHA, the FEHA, and the Unruh Civil Rights Act, the court concludes that defendant shall pay plaintiff the amount of $65,000 in compensatory damages.

78. The standard for the availability of punitive damages is whether "the defendants acted with malice or reckless indifference that their actions might violate a federal statute of which they were aware." Preferred Properties, Inc. v. Indian River Estates, Inc., 276 F.3d 790, 800 (6th Cir.), cert. denied 536 U.S. 959 (2002); The Fair Hous. Council of San Diego, Joann Reed v. Penasquitos Casablanca Owner's Ass'n, 381 F. App'x 674, 676-77 (9th Cir. 2010) ("The district court properly concluded that a showing of reckless indifference is necessary for plaintiffs to prevail on their punitive damages claim."); 42 U.S.C. § 3613(c)(1). The court is persuaded that defendant acted with reckless indifference to plaintiff's rights under the FHA. Defendant has continuously violated and continues to violate plaintiff's rights under the FHA as set forth above from the time plaintiff moved into defendant's facility in 2009.[9] Accordingly, the court finds that plaintiff is entitled to $10,000 in punitive damages.

---

[9]  The court recognizes that plaintiff is entitled to damages from April 2010 to the present.

B.   Injunctive Relief.

79.   A defendant found to be in violation of Section 17200 "may be enjoined in any court of competent jurisdiction."  Cal. Bus. & Prof. Code § 17203.  "The courts in California have consistently upheld the right of both individual persons and organizations under the unfair competition statute to sue on behalf of the public for injunctive relief as private attorneys general[.]" Herr v. Nestle U.S.A., Inc., 109 Cal.App.4th 779, 789 (2003)  (internal quotation marks omitted) (affirming injunction prohibiting employer from engaging in employment discrimination).  "In a suit brought on behalf of the general public under section 17200, a court can make such orders or judgments as may be necessary to prevent the use or employment of an unfair business practice, without certifying a class."  Reese v. Wal Mart Stores, Inc., 73 Cal.App.4th 1225, 1239 (1999) (alterations and internal quotation marks omitted); see Brockey v. Moore, 107 Cal.App.4th 86, 102 (Section 17203 "allows trial courts great latitude in protecting the public").  Courts' power to grant equitable relief is "extraordinarily broad."  Hewlett v. Squaw Valley Ski Corp., 54 Cal.App.4th, 499, 540 (1997); accord Cortez v. Purolator Air Filtration Products Co., 23 Cal.4th 163, 180 (2000); see also Barquis v. Merchants Collection Ass'n, 7 Cal.3d 94, 111 (1972) ("the Legislature . . . intended by this sweeping language [of Section 17200] to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.") (footnote omitted); Motors, Inc. v. Times Mirror Co., 102 Cal.App.3d 735, 740 (1980) ("It would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited, since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery.") (alterations and footnote omitted).  This broad remedial power "necessarily includes the authority to make orders to prevent such activities from occurring in the future."  Hewlett, 54 Cal.App.4th at 540; see Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1123 (9th Cir. 1999), abrogated on other grounds as recognized by Perfect 10, Inc. v. Google, 653 F.3d 976, 979 (9th Cir. 2011), (plaintiff entitled to equitable relief under Section 17200 if "he shows that the conduct will probably recur.").  "Injunctive relief may be as wide and diversified as the means employed in perpetration of the wrongdoing."  Hewlett, 54 Cal.App.4th at 540 (internal quotation marks omitted).

80.  Plaintiff is also entitled to injunctive relief under the FHA and FEHA.  <u>See</u> 42 U.S.C. § 3613(c)(1); Cal. Gov't Code § 12989.2; <u>see also</u> <u>Park View Heights Corp. v. City of Black Jack</u>, 605 F.2d 1033, 1036 ("Construed broadly, [§ 3613] gives the district court the power it needs to fashion affirmative equitable relief calculated to eliminate as far as possible the discriminatory effects of violation of the Fair Housing Act.").

81.  Here, the court finds injunctive relief appropriate and will grant injunctive relief as specified below.  Defendant is in violation of Section 17200 and its various actions and inactions have continued for several years. (<u>See</u> FAC at ¶¶ 8-11 & 13-16; Montano Decl. at ¶¶ 4-7, 10-12 & 15-24).  The court finds that the conduct will likely recur if an injunction does not issue.

82. Any conclusion of law that more correctly constitutes a finding of fact should be treated as such.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED that:

1.  Judgment shall be entered in favor of plaintiff on his claims of violations of the FHA, FEHA, Unruh Civil Rights Act, CDPA; Rehabilitation Act, and Section 17200.  Defendant is liable to plaintiff for damages in the amount of $65,000, with interest to accrue at the legal rate from the date of this Order.

2.  Defendant shall pay punitive damages in the amount of $10,000.

3.  Defendant, its officers, directors, employees, licensees, and all other persons acting in concert with it shall do the following:

a.  Hire an ADA consultant with, at a minimum, experience in the FHA, ADA and the Rehabilitation Act.  No later than six months from the filing date of this Order, the consultant shall: (1) conduct a site inspection of the rooms, facilities and common areas of Bonnie Brae to assess compliance with the FHA, ADA and Rehabilitation Act; (2) prepare and present a detailed report to the court and counsel for the parties setting forth all disability access deficiencies relating to plaintiff's residency and recommending modifications; and (3) propose a process for residents to request reasonable accommodations and Bonnie Brae to respond to the requests.

b.  No later than 30 days following the completion of the report, counsel for the parties shall meet and confer in person to discuss the consultant's report in an attempt to work out any disagreements relating to type and scope of the work recommended by the consultant.  Counsel may discuss with the consultant any proposed modifications or revisions the consultant's report.  However, the consultant is not required to incorporate any of the parties' suggestions into his or her report.

c.  No later than ten (10) days following the meet and confer, counsel shall submit a proposed order approving the consultant's recommendations.  In the event the parties are unable to agree on the consultant's recommendations, then defendant's counsel shall submit a memorandum of points and authorities – no later than 14 (14) calendar days following the meet and confer – setting forth its position with respect to consultant's recommendations.  No later than seven (7) calendar days after defendant submits its memorandum of points and authorities, plaintiff's counsel shall submit his response to defendant's memorandum.  No later than seven (7) calendar days after plaintiff files his responsive memorandum, the consultant may provide a memorandum addressing the positions of the parties.

d.  No later than six (6) months after the court issues its order based on the consultant's report and the parties' briefing, defendant shall:

(1) at a minimum, provide plaintiff with his requested accommodations, including an accessible room, bathroom, shower and public area that complies with the requirements set forth in the ADA Accessibility Guidelines.  Specifically, defendant shall ensure that plaintiff is assigned to a room large enough to accommodate his wheelchair, with bathroom entrances wide enough for his wheelchair, door levers that he can operate without assistance, and a thermostat that maintains room temperature.

(2) implement the reasonable accommodation process approved by the court.

4.  Beginning April 1, 2015, and every 120 days thereafter, the parties shall file a Joint Status Report describing in detail the extent and status of defendant's compliance with this Order.

5.  Defendant shall pay plaintiff's counsel at an hourly rate not to exceed $250 for all time plaintiff's counsel spends relating to the development and implementation of the injunctive relief ordered by the court.

6.  The court finds that the injunctive relief set forth here is necessary to prevent defendant's ongoing use of its practices constituting unfair competition.  <u>See</u> Cal. Bus. & Prof. Code § 17203.

7.  The parties shall forthwith meet and confer regarding a proposed judgment, which plaintiff shall lodge no later than **January 12, 2015**.

Dated this 7th day of January, 2015.

/s/
Fernando M. Olguin
United States District Judge